# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE: ASBURY AUTOMOTIVE GROUP, INC. DATA INCIDENT LITIGATION | LEAD CASE NO.: 1:24-mi-55555-VMC |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY ACTION

**BAKER & HOSTETLER LLP**

Christopher A. Wiech
Georgia Bar No. 757333
cwiech@bakerlaw.com
Chelsea M. Lamb
Georgia Bar No. 524879
clamb@bakerlaw.com
Olivia S. Williams
Georgia Bar No. 804380
owilliams@bakerlaw.com
1170 Peachtree Street, Suite 2400
Atlanta, GA 30309-7676
Telephone: 404.256.6694

*Attorneys for Defendant*

Defendant Asbury Automotive Group, Inc. ("Defendant" or "Asbury"), in accordance with the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, moves to compel individual arbitration of the named Plaintiffs' claims and to stay this action so the parties can arbitrate their disputes.[1] All Plaintiffs' claims are subject to binding arbitration. As such, "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."[2]

## I.    INTRODUCTION

Asbury is an automotive retail and service company that offers new and used vehicles for sale, replacement parts, financing options, vehicle maintenance, and collision repair services. Plaintiffs are current and former Asbury employees.[3] As

---

[1] In filing this Motion to Compel, Asbury reserves the right to compel arbitration as to absent unnamed class members who are likewise subject to arbitration agreements with Asbury, and thus cannot bring claims in this proceeding. *See Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018) (holding bank did not waive its right to compel arbitration by waiting to file its motion to compel arbitration until after the class was certified "because the District Court lacked jurisdiction over such motions."); *see also In re Checking Account Overdraft Litig. (Spears Haymond I)*, 780 F.3d 1031, 1037-39 (11th Cir. 2015) (holding the court "lacked jurisdiction to rule on the arbitration obligations of the unnamed putative class members.").

[2] *Smith v. Spizzirri*, 601 U.S. 472, 478, 144 S. Ct. 1173, 1178, 218 L. Ed. 2d 494 (2024) (holding that).

[3] Plaintiffs Evan Miller ("Miller"), David Pedraza ("Pedraza"), Christian Scott ("Scott"), and Stephen Johnson ("Johnson") are former Asbury employes and Plaintiffs Omar Aviles ("Aviles") and Brendan Siebels ("Siebels") are current Asbury employees. (Consolidated Amended Class Action Complaint (Dkt. 33)

part of the hiring process, they each signed a Mutual Agreement to Arbitrate (the "Arbitration Agreement" or the "Agreement"), which included various provisions such as an arbitration clause, jury trial waiver, and class action waiver.[4] Nevertheless, Plaintiffs bring this putative class action lawsuit because Asbury suffered a cyberattack and notified Plaintiffs that their personal data was potentially impacted.[5] Plaintiffs now assume they have been or will be harmed because of it. And so they assert various claims sounding in tort and contract against Asbury on behalf of themselves and a putative class.

But Plaintiffs' claims should be arbitrated, not litigated before this Court. The crux of their case is that Asbury breached some legal or contractual duty to safeguard personal data that they each provided to Asbury as part of the hiring process or employment relationship. As such, these claims are subject to Plaintiffs' Arbitration Agreements, which are intended to apply to "all Disputes between the parties which may otherwise be brought in a court or before a governmental agency, whether or not arising out of or related to an Individual's application for employment, employment, or termination of employment with [Asbury], and whether or not arising before, during, or after any employment relationship

---

("CAC") ¶¶ 97, 109, 121, 145, 157; Declaration of Jed Milstein ("Milstein Decl.") ¶¶ 17.)

[4] *See infra* pp. 4-5. Although each Plaintiff entered into an Arbitration Agreement, the Agreements are not identical except for Plaintiffs Pedraza's and Scott's.

[5] (*See* CAC), *passim*.

between the parties."[6] Courts routinely find such language to be sufficiently broad to create a strong presumption of arbitrability.

Moreover, as it relates to Plaintiffs Pedraza and Scott, any doubt about whether their claims are subject to arbitration should be resolved by an arbitrator, not this Court, based on an express delegation clause in their Arbitration Agreements.

Thus, for these reasons and others discussed below, this Court is not the proper forum for the parties' disputes.

## II.    STATEMENT OF FACTS

Asbury "is a corporation that owns 157 new vehicle dealerships across 15 states" and "offers new and used vehicles for sale, replacement parts, financing options, vehicle maintenance, and collision repair services." (CAC ¶¶ 22-23.) Plaintiffs Miller, Pedraza, Scott, and Johnson are former Asbury employes and Plaintiffs Aviles and Siebels are current Asbury employees. (Milstein Decl. ¶¶ 17, 21, 25, 29, 32, 39, 43; CAC ¶¶ 97, 109, 121, 145, 157.)

As pled, in December 2023, Asbury experienced a cybersecurity incident (the "Incident") that resulted in unauthorized access to files on Asbury's servers containing the personal information and data of current and former employees and prospective employees, including allegedly the named Plaintiffs. (CAC ¶¶ 2, 29.)

---

[6] *See infra* p. 5.

In their Complaint, Plaintiffs assert a host of allegations and claims against Asbury due to the Incident. Plaintiffs argue that Asbury "disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable measures to ensure that the Private Information of Plaintiffs and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies and procedures regarding the encryption of data." (*E.g.*, CAC ¶ 14.)

Indisputably, Plaintiffs' claims arise out of or relate to their employment relationship with Asbury. That relationship is the only reason why each Plaintiff provided their personal data to Asbury. (CAC ¶¶ 30, 40, 98, 110, 122, 134, 146, 158, 187, 208, 229.) Indeed, Plaintiffs tie their claims to their employment relationship with Asbury and the hiring process, *e.g.*:

> *As a condition of employment, and/or of applying for employment* with Asbury, Plaintiffs and the Class Members were required by Asbury to confide and make available to it their sensitive and confidential Private Information, including, but not limited to, their names and Social Security Numbers, and Driver's License numbers, and/or State Identification Numbers.

(CAC ¶ 30, emphasis added.)

Ultimately, while each Plaintiff's Arbitration Agreement is different in some respects, except for Plaintiffs Pedraza's and Scott's Agreements which are identical, all Arbitration Agreements require Plaintiffs to arbitrate all disputes

arising out of or related to their prospective or actual employment relationship with Asbury. (Milstein Decl. ¶¶ 9-17, Exs. A-F.)

### III.    ARGUMENT AND CITATIONS TO AUTHORITY

**A.    <u>Legal Standard</u>**

Section 2 of the FAA applies here[7] and provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. "The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotations and citation omitted).  The Supreme Court has repeatedly held that that FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v Brown*, 565 U.S. 533 (2012).  And the FAA "requires courts 'rigorously' to 'enforce arbitration

---

[7] Plaintiffs' Arbitration Agreements, with the exception of Plaintiff Johnson's, expressly state that the FAA is applicable and the Agreement should be enforced under, or is governed by, the FAA. (*See, e.g.*, Milstein Decl., Ex. A ¶ 1.) Even though Plaintiff Johnson's Agreement does not expressly identity the FAA as being applicable, it is applicable because the Agreement arises out of Plaintiff Johnson's employment by Asbury, and Asbury is a company that is involved interstate commerce. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) ("The validity of an arbitration agreement is generally governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the 'FAA'), which was enacted in 1925 to reverse the longstanding judicial hostility toward arbitration . . . . The FAA generally provides for the enforceability of 'a contract evidencing a transaction involving commerce.' The United States Supreme Court has clarified that the FAA generally applies to contracts of employment. . . .").

agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (internal citations omitted, emphasis in original).

"On a motion to compel arbitration, a court undertakes a two-step inquiry to determine (1) whether the parties agreed to arbitrate the dispute in question and, if they did, (2) whether legal constraints external to their agreement forecloses arbitration." *Kattula v. Coinbase Global, Inc.*, No. 1:22-CV-3250-TWT, 2023 WL 4373385, at *1 (N.D. Ga. July 6, 2023); *accord E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). A court's authority is limited to only those two determinations. Significantly, "the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). A court's authority is further limited where, like here with Plaintiffs Pedraza's and Scott's Arbitration Agreements, issues of arbitrability are expressly delegated to the arbitrator. *See Parnell v. Cashcall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) ("[P]arties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable.").

**B.    All Plaintiffs Agreed to Arbitrate Their Claims Against Asbury**

In the Eleventh Circuit, to determine the existence of an arbitration agreement, courts apply a "summary judgment-like standard." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (citations omitted). "[A] district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Id.*

1.    **Each Plaintiff Entered Into a Written Arbitration Agreement With Asbury**

"When determining whether an arbitration agreement exists, courts generally apply ordinary state-law principles that govern formation of contracts." *U.S. v. United Biologics, LLC*, No. 1:14-cv-01486, 2018 WL 11447727, at *2 (N.D. Ga. Feb. 15, 2018); *accord Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). "The 'federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law.'" *Gulfstream Aerospace Corp.*, 428 F.3d 1368 (internal citations omitted). Above all, "[a]rbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *AT&T Mobility LLC*, 563 U.S. at 351. Further, an arbitration agreement need only be in writing to be enforced. *See* 9 U.S.C. § 2; *Gulfstream Aerospace Corp.*, 428 F.3d at 1369.

The Arbitration Agreements at issue are not governed by a specific state's laws. (*See* Milstein Decl., Exs. A-F.) Instead, the Agreements provide one of the following: (1) arbitration "should be held in the state and county of the [Plaintiff's] primary employment at the time of the act giving rise to the dispute" (*id.*, Ex. C at R. 7, Ex. D at R. 7); (2) "[t]he Arbitrator shall determine where the Arbitration will be held, giving proper consideration to such factors" (*id.*, Ex. A at R. 9); (3) the Arbitration shall take place in or near the city in which Plaintiff is or was last employed by Asbury (*id.*, Ex. B ¶ 4, Ex. E ¶ 2); or (4) in the case of Plaintiff Siebels' Agreement, "the arbitration hearing shall take place in St. Louis, Missouri (*id.*, Ex. F ¶ 8). Here, Plaintiffs allege that Plaintiff Miller is a citizen of Indiana; Plaintiff Aviles is a citizen of Arizona; Plaintiff Pedraza is a citizen of Georgia; Plaintiff Scott is a citizen of Connecticut[8]; Plaintiff Johnson is a citizen of Colorado; and Plaintiff Siebels is a citizen of Missouri. (CAC ¶¶ 15-20.) Absent a specific governing state law in any Agreement, Asbury applies Georgia law as the law of forum for this Court sitting in diversity. Application of the laws of Indiana, Arizona, Connecticut, Colorado, or Missouri would not change the analysis or the outcome, though.[9]

---

[8] *See* Milstein Decl. ¶¶ 31-33 (discussing Asbury's records which indicate that Plaintiff Scott was employed by Asbury in Colorado).

[9] *See, e.g., Doe v. Carmel Operator, LLC, 160 N.E.3d 518, 521* (Ind. 2021) (compelling arbitration by following the FAA and state contract principles); *Credit Acceptance Corp. v. Hinton*, No. AANCV166021002S, 2018 WL 793934, at *3

In Georgia, a written agreement to submit an existing controversy or a controversy arising thereafter to arbitration is presumptively valid and enforceable. *See Triad Health Mgmt. of Ga., III, LLC v. Johnson*, 298 Ga. App. 204, 206 (2009). Georgia law applies an "objective standard of assent" to contract formation. *Turner Broad. Sys., Inc. v. McDavid*, 303 Ga. App. 593, 597 (2010). "[U]nder well-established Georgia law[,] . . . valid contracts, including contracts containing arbitration clauses, may be formed by a party's . . . acceptance of services without objection." *Honig v. Comcast of Ga. I, LLC*, 537 F. Supp. 2d 1277, 1283-84 (N.D. Ga. 2008); *accord Athon v Direct Merchants Bank*, No. 5:06-cv-1, 2007 WL 1100477, at *4 (M.D. Ga. Apr. 11, 2007). Even "part performance of the terms of a contract can be evidence of the acceptance of the terms of the contract." *Fed. Paper Bd. Co. v. Harbert-Yeargin, Inc.*, 92 F. Supp. 2d 1342, 1350 (N.D. Ga. 1998).

---

(Conn. Super. Ct. Jan. 16, 2018) (same); *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 245, 119 P.3d 1044, 1048 (Ct. App. 2005) (finding arbitration clause enforceable based on the application of the FAA and state contract law); *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 778 (Mo. 2014) ("The enforceability of this arbitration promise is controlled by the Federal Arbitration Act, 9 U.S.C. §§ 1–9 (the "FAA"), but the FAA looks to state law to decide the threshold questions of contract formation."); *Naizgi v. HSS, Inc.*, 685 F. Supp. 3d 1015, 1021 (D. Colo. 2023) ("To determine whether a valid arbitration agreement exists, a court must apply state contract law principles" even when the FAA applies).

Plaintiffs acknowledge that they are current or former employees of Asbury and that they provided their Private Information to Asbury for the sole purpose of applying for employment and/or as a condition of their employment. (CAC ¶¶ 30, 40, 98, 110, 122, 134, 146, 158, 187, 208, 229.) When each Plaintiff was hired by Asbury, they agreed to be bound by the Arbitration Agreements and their terms. (Milstein Decl. ¶¶ 9, 17.) There were no exceptions as each Plaintiff understood that:

> In consideration of the decision to accept or to continue employment, the mutual obligation to arbitrate, and the mutual benefits (such as reduced expense and increased efficiency) that private binding arbitration can provide, this Agreement, offered by Asbury Automotive Group ("the Company") and accepted by the undersigned Individual, is intended to provide the exclusive means of resolving all Disputes, as defined below, which may arise between them. In consideration for their mutual promises, both parties, by entering into this Agreement, give up their right to trial by court or by jury.

(*Id*., Ex. A ¶ 1.)[10] All Plaintiffs physically signed, electronically or by hand, their Arbitration Agreement. (*Id*. at ¶¶ 13, 19, 23, 27, 34, 37, 41; *id*., Exs. A-F.) Thus, undeniably, a written arbitration agreement exists between each Plaintiff and Asbury.

---

[10] Although the Agreements differ, each Agreement includes a variation of this language that is substantively the same. (*Id*., Ex. B ¶ 1, Ex. C ¶ 1, Ex. D ¶ 1, Ex. E ¶ 1, Ex. F. at Introductory ¶.)

**2.      Plaintiff Pedraza's and Plaintiff Scott's Arbitration Agreements Delegate All Disputes, including Arbitrability, to the Arbitrator**

Finding that Plaintiffs Pedraza and Scott each have a written arbitration agreement with Asbury, the Court's inquiry can stop here, and individual arbitrations should be compelled. Whether their claims are arbitrable is an issue to be decided by the arbitrator under the terms of their Arbitration Agreements.

Here, the Arbitration Agreements clearly and unmistakably delegate to the arbitrator to resolve "all Disputes between the parties which may otherwise be brought in a court or before a governmental agency." (Milstein Decl. ¶¶ 26, 30; *id.*, Ex. C ¶ 2(A), Ex. D ¶ 2(A).) Additionally, the parties expressly agreed to delegate other gateway issues, such as:

- "all Disputes between the parties . . . whether or not arising out of or related to the [Plaintiff's] application for employment, employment, or termination of employment with [Asbury], and whether or not arising before, during, or after any employment relationship between the parties;" and

- "[a]ll claims and disputes, and/or controversies relating to the scope, validity, or enforceability of this Agreement."

(*Id.,* Ex. B ¶ 3, Ex. C ¶ 3.)

The Eleventh Circuit has held such delegation clauses are proper. *See Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[G]ateway issues can be

11

expressly delegated to the arbitrator where 'the parties clearly and unmistakably provide [for it]'" (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649(1986)). "If the parties clearly and unmistakably intended to arbitrate *all* gateway issues, then *all* gateway issues—regardless of how frivolous the court may deem them to be—should be arbitrated." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1270 (11th Cir. 2017); *see also In re Checking Acct. Overdraft Litig.*, 674 F.3d 1252, 1255 (11th Cir. 2012).

Further, "[a] delegation agreement is simply an additional, antecedent agreement that the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1295 (11th Cir. 2022) (quotation marks omitted). When an arbitration agreement contains a delegation clause—as Plaintiffs Pedraza's and Scott's Arbitration Agreements do here—the only challenge the Court can entertain is one specifically to the formation of the delegation clause. *See Attix*, 35 F.4th at 1304 ("A party specifically challenges the validity or enforceability of a delegation agreement if, and only if, the substantive  nature of the party's challenge meaningfully goes to the parties' precise agreement to delegate threshold arbitrability issues."); *Waffle House, Inc.*, 866 F.3d at 1265 (rejecting challenge that "did not directly challenge

the delegation provision," but "[i]nstead, the heart of his argumentation was directed at the agreement as a whole").

This Court consistently enforces delegation clauses in arbitration agreements to compel individual arbitrations of putative class claims arising out of alleged failures to safeguard personal data from cyberattacks. *See Felix v. Hospitality Staffing Solutions*, this Court. No. 1:23-cv-3522-MHC (Jul. 1, 2024) (Cohen, J.) (compelling arbitration of employees' claims against employer); *Moreland v. 1st Franklin Fin. Corp.*, No. 2:23-CV-00038-SCJ, 2024 WL 948000, at *4 (N.D. Ga. Jan. 11, 2024), *clarified on denial of reconsideration*, No. 2:23-CV-00038-SCJ, 2024 WL 2406858 (N.D. Ga. Apr. 4, 2024) (Jones, J.) (compelling arbitration of consumers' claims against commercial lender). Moreover, as recognized in *Kattula v. Coinbase Global, Inc.*, the context of a cyberattack and allegedly misused personal data does not alter the Court's analysis or outcome. 2023 WL 4373385, at *2-4 ("[T]he Court agrees with Coinbase that whether the [p]laintiffs' claims fall within the plain language of the exceptions to the delegation clauses is a question for the arbitrator."); *see also Granados v. Lendingtree LLC*, No. 3:22-CV-00504, 2023 WL 1481545, at *3 (W.D.N.C. Feb. 2, 2023), *report and recommendation adopted*, No. 3:22-CV-504-MOC, 2023 WL 2672830 (W.D.N.C. Mar. 28, 2023) (finding in context of data security class litigation, "[t]he issue as to whether the

data breach is within the scope of the arbitration provision must be resolved the arbitrator.").

Thus, following the rationale of this Court's past decisions, any dispute over the scope of Plaintiffs Pedraza's and Scott's Arbitration Agreements should be decided by the arbitrator.

### 3. The Scope of Plaintiffs' Arbitration Agreements Is Broad and Covers This Dispute

Regardless of the inclusion of a delegation clause in the Arbitration Agreements, Plaintiffs' claims are covered by the Arbitration Agreement, which is broad. For starters, the FAA "creates a 'presumption of arbitrability' such that 'any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration.'" *Bazemore, LLC*, 827 F.3d at 1329 (citation omitted). This includes any issues relating to contract language, waiver, delay, or other defenses to arbitrability. *See Robinson v. Ultimate Sports Bar, LLC*, No. 1:12–CV–2311–TWT, 2014 WL 2050516, at *1 (N.D. Ga. May 19, 2014). "Absent some ambiguity in the agreement, [] it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C.*, 534 U.S. at 289.

Here, each Plaintiff's Arbitration Agreement includes some form of language that provides "Disputes subject to arbitration are all Disputes between the parties which may otherwise be brought in a court or before a governmental agency, whether or not arising out of or related to the Individual's application for

employment, employment, or termination of employment with the Company, and whether or not arising before, during or after any employment relationship between the parties." (Milstein Decl., Ex. A ¶ 2(A); *id.* ¶ 12.)[11] Courts have consistently held that use of "relating to" or "related to" in arbitration agreements is sufficiently broad in scope to create a strong presumption of arbitrability. *See, e.g., Am. S. Ins. Co. v. PXRE Reinsurance Co.*, No. 1:04-cv-3572-WSD, 2005 WL 8155708, at *2 (N.D. Ga. June 13, 2005).

All of Plaintiffs' allegations and claims in the Complaint relate to—if not arise out of—their actual employment relationship with Asbury. Absent that relationship, they would not have any claims because they would not have provided their "Private Information" to Asbury for employment purposes. (CAC ¶ 30.)

---

[11] Substantially similar language is included in each Plaintiff's Arbitration Agreement. (*Id.*, Ex. C ¶ 2(A) (same language), Ex. D ¶ 2(A) (same language), Ex. B ¶ 2 ("The Company and I agree to resolve by final and binding arbitration any dispute, claim, or controversy related to my employment with or termination of employment by the Company. . . ."), Ex. E ¶ 2 ("Employee and the Company agree that any dispute, claims or controversy. . . related to my employment with or termination of employment by this Company . . . will be resolved by final and binding arbitration . . . ."), Ex. F ¶ 1(A) ("Disputes subject to arbitration include: All Disputes between the parties which may otherwise be brought in a court or before a governmental agency, whether or not arising out of or related to the Employee's application for employment, employment or termination of employment with the Company, and whether or not arising before, during or after any employment relationship between the parties.").

15

In *Hearn v. Comcast Cable Communications, LLC*, the Eleventh Circuit reversed the district court's denial of a motion to compel arbitration of a consumer class action alleging improper credit checks (in violation of the Fair Credit Reporting Act) by their cable provider. 992 F.3d 1209 (11th Cir. 2021). The arbitration agreement there contained "arising out of or related to" language as well. The Eleventh Circuit, adhering to "the FAAs liberal federal policy favoring arbitration agreements," found "that Comcast would not have access to Hearn's personal information—and therefore could not have engaged in the allegedly tortious conduct—but for the pre-existing Agreement." *Id.* at 1215–16. Thus, the plaintiffs' claims "relate[d] to the Subscriber Agreement." *Id.*

Similarly, Plaintiffs' "access to personal information"-based claims arise out of and relate to their employment relationship with Asbury, which is subject to and predicated on their Arbitration Agreements. Again, but for the Plaintiffs' employment and antecedent agreements, there would be no dispute.

Further, the Complaint alleges that Asbury breached a contract with them to protect their personal data, negligently supervised the protection of their personal data, invaded their privacy, and caused them anxiety or emotional distress. (CAC ¶¶ 80, 103, 115, 127, 184, 139, 151, 163, 206- 225.) Each of these types of purported harms is expressly covered by the Arbitration Agreements for Plaintiffs Miller, Pedraza, Scott, and Siebels:

16

> B.  Such Disputes include, but are not limited to, claims of refusal to hire, wrongful termination, breach of contract, defamation, assault, battery, violation of public policy, negligent retention, negligent supervision, negligent entrustment, invasion of privacy, retaliation, wrongful imprisonment, infliction of emotional distress, any other

(Milstein Decl., Exs. A, C, D, F, emphasis added.)

## C.    Plaintiffs' Arbitration Agreements Are Valid and Enforceable, Not Unconscionable[12]

The "savings clause" of the FAA, 9 U.S.C. § 2, "permits agreements to arbitrate to be invalidated by generally applicable [state law] contract defenses, such as fraud, duress, or unconscionability, 'but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Webb v. Doordash, Inc.*, 451 F. Supp. 3d 1360, 1368 (N.D. Ga. 2020) (citations omitted). Courts apply state contract law to questions regarding the "validity, revocability, and enforceability of arbitration agreements." *Anderson v. Angie's List, Inc.*, No. 1:22-CV-4344-TWT, 2023 WL 2933263, at *1 (N.D. Ga. Apr. 13, 2023).

In Georgia, "it is the cardinal rule of contract construction that the court should ascertain the intent of the parties." *Arnsdorff v. Papermill Plaza, LLC*, 326 Ga. App. 438, 438, 756 S.E.2d 668, 669 (2014). "The first step is to look to the

---

[12] Issues of validity and enforceability, except as to the class action waiver, are clearly and unmistakably delegated to the arbitrator in Plaintiffs Pedraza's and Scott's Agreements. (*See supra* pp. 11-14.) Accordingly, the Court should not consider any issues of validity and enforceability as it relates to Plaintiffs Pedraza and Scott. But if the Court does, it will find that all Plaintiffs' Arbitration Agreements are not unconscionable.

four corners of the instrument to determine the intention of the parties from the language employed." *Livoti v. Aycock*, 263 Ga. App. 897, 901 (2003).

The parties' Arbitration Agreements, on their face, conspicuously and plainly provide for arbitration. For example, Plaintiffs Pedraza's and Scott's Arbitration Agreements provide the following:

## ASBURY AUTOMOTIVE GROUP
### ARBITRATION AGREEMENT

In consideration of the decision to accept or to continue employment, the mutual obligation to arbitrate, and the mutual benefits (such as reduced expense and increased efficiency) that private binding arbitration can provide, this Agreement, offered by Asbury Automotive Group ("the Company") and accepted by the undersigned Individual, is intended to provide the exclusive means of resolving all Disputes, as defined below, which may arise between them. In consideration for their mutual promises, both parties, by entering into this Agreement, give up their right to trial by court or by jury. This Agreement is not a contract of employment but arises out of the Individual's employment or prospective employment by the Company that is involved in interstate commerce. The Parties agree that this Agreement is to be enforced under the Federal Arbitration Act ("FAA") and involves a transaction in interstate commerce. In the event that it is determined that the FAA does not apply, then this Agreement shall be enforced under the applicable state law in the state of the Individual's primarily assigned work location.

(Milstein Decl., Exs. C, D at introductory ¶¶.)[13] The Agreements also clearly and inconspicuously explain what disputes the Agreements apply to. For example:

---

[13] Similar language is included in each Plaintiffs' Arbitration Agreement. (*See id*., Ex. A at introductory ¶, Ex. B ¶ 1, Ex. E ¶ 1, Ex. F at introductory ¶.)

**2. DISPUTES SUBJECT TO ARBITRATION.** A.  Disputes subject to arbitration are all Disputes between the parties which may otherwise be brought in a court or before a governmental agency, whether or not arising out of or related to the Individual's application for employment, employment, or termination of employment with the Company, and whether or not arising before, during or after any employment relationship between the parties.  Also subject to arbitration are disputes involving any person or entity whose liability or right of recovery derives from a Dispute that is covered by this Agreement (e.g., partner, agent, subsidiary or parent corporation, affiliate, shareholder, successor or assign of a party).

B.  Such Disputes include, but are not limited to, claims of refusal to hire, wrongful termination, breach of contract, defamation, assault, battery, violation of public policy, negligent retention, negligent supervision, negligent entrustment, invasion of privacy, retaliation, wrongful imprisonment, infliction of emotional distress, any other tort, contract, equitable, statutory, or constitutional claim, breaches of any duty owed by an employee to an employer, and claims against an employee, officer, director or agent of the Company who has agreed to arbitrate a claim which would directly or indirectly subject either party to liability.  Disputes also include any claims of discrimination or harassment prohibited by applicable law, including statutory and/or common law claims of discrimination or harassment on the basis of age, race, national origin, religion, disability, sex/gender, color, citizenship and any other basis protected by law.  Further, Disputes include claims related to payment of wages and compensation, polygraph examinations, testing for drugs and other controlled substances, layoffs due to plant closings, health, retirement or pension benefits, veterans' rights, obtaining or using credit reports, drug testing, whistle blowing activity and leaves of absence.

(*Id.*, Ex. A ¶ 2(A)-(B).)[14] Thus, the intent of the parties to enter into the Arbitration Agreements is clear; the agreements are valid and enforceable.

Moreover, "Georgia law protects the freedom of parties to contract. This is true even though a party may enter a contract that is so unreasonable or that may lead to hardship." *Honig*, 537 F. Supp. 2d at 1285 (internal citations omitted). Only if a contract is procedurally or substantively unconscionable is it unenforceable. *Id.* But "Georgia law sets a high bar for the finding of unconscionability." *Hensley v. S.G.T., Inc.*, No. 1:15-CV-00077-RWS, 2015 WL 4647979, at *4 (N.D. Ga. Aug. 5, 2015). Unconscionability has two parts: procedural and substantive; both must be shown. *Hensley*, 2015 WL 4647979, at *4.

---

[14] Similar language is included in each Plaintiffs' Arbitration Agreement. (*Id.,* Ex. B ¶¶ 2-3, Ex. C ¶¶ 2(A)-(B), Ex. D ¶¶ 2(A)-(B); Ex. E ¶ 2, Ex. F ¶¶ 1(A)-(B).)

"In determining procedural unconscionability, Georgia courts look to the following factors: 'age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of meaningful choice.'" *Id.* (citations omitted.) In short, procedural unconscionability focuses on the circumstances of the making of the contract. Notably, nowhere in their Complaint do Plaintiffs allege uneven bargaining positions. Apparent from their pleading, each Plaintiff understood that they made the conscious choice to work with Asbury and knowingly provided their personal data to Asbury as a condition of their employment. Nor do Plaintiffs allege hidden contract terms or confusing language. Even if they had, such assertions are belied on the face of the agreements in this case.

For substantive unconscionability, the court reviews "matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Honig,* 537 F. Supp. 2d at 1285-86. Plaintiffs must show that the Arbitration Agreements were ones that "no sane man not acting under a delusion would make, and that no honest man would take advantage of." *W. Ga. Wireless, LLC v. Southwestco Wireless, LP*, No. 3:16-cv-196, 2017 WL 10438808, at *3 (N.D. Ga. Mar. 14, 2017) (citation omitted). Stated differently, the contract must

"shock the conscious." *Id.* (citation omitted.) This is a "high bar," and Plaintiffs would bear the burden of proving it. *See Hensley,* 2015 WL 4647979, at *4. Plaintiffs cannot meet that burden here.

This Court has consistently found that arbitration agreements, even in consumer contracts, are not per se unconscionable. *See, e.g., Coinbase Glob.*, 2023 WL 4373385, at *3-6 (compelling individual arbitration of cybersecurity-related class action based on consumer arbitration agreement for users of cryptocurrency platform); *Anderson v. Angie's List, Inc.*, No. 1:22-CV-4344-TWT, 2023 WL 2933263 (N.D. Ga. Apr. 13, 2023) (compelling individual arbitration of Telephone Consumer Protection Act class action based on consumer arbitration agreement for users of online services); *Hopkins v. World Acceptance Corp.*, 798 F. Supp. 2d 1339, 1346-50 (N.D. Ga. 2011) (finding arbitration agreement in loan contract enforceable and conscionable); *see also LendingTree, LLC*, 2023 WL 2672830, at *1-2 (compelling individual arbitration of data security incident class action based on consumer arbitration agreement for users of online financial services).

**D.    The Court Should Stay This Action Pending Individual Arbitrations**

Section 3 of the FAA provides that when a suit filed in federal court is subject to arbitration based on a written agreement to arbitrate, as is this case, the court "*shall* on application of one of the parties *stay the trial of the action until such arbitration has been had* in accordance with the terms of the agreement." 9

U.S.C. § 3 (emphasis added); *see also E.E.O.C.*, 534 U.S. at 289 ("The FAA provides for stays of proceedings in federal district court . . . for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement.") (citing 9 U.S.C. §§ 3 and 4).

Earlier this year, in *Smith v. Spizzirri*, the United States Supreme Court interpreted the FAA's mandate to stay actions subject to arbitration, holding that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." 601 U.S. at 478, 144 S. Ct. at 1178; *accord Georgia Auto Grp., LLC v. Meta Platforms, Inc.*, No. 5:23-CV-384 (MTT), 2024 WL 2260718, at *2 (M.D. Ga. May 17, 2024); *see also Coinbase, Inc. v. Bielski*, 599 U.S. 736, 747 (2023) (affirming stay requirement under FAA § 3 in the context of interlocutory appeals).

## IV.    CONCLUSION

For the foregoing reasons, this Court should compel the Plaintiffs to individually arbitrate their claims and stay this case pending the outcome of those arbitrations.

Respectfully submitted, this 30th day of October 2024.

[SIGNATURE APPEARS ON NEXT PAGE]

**BAKER & HOSTETLER LLP**

/s/ *Christopher A. Wiech*

Christopher A. Wiech
Georgia Bar No. 757333
cwiech@bakerlaw.com
Chelsea M. Lamb
Georgia Bar No. 524879
clamb@bakerlaw.com
Olivia S. Williams
Georgia Bar No. 804380
owilliams@bakerlaw.com
1170 Peachtree Street, Suite 2400
Atlanta, GA 30309-7676
Telephone: 404.256.6694

*Attorneys for Defendant*

## <u>RULE 7.1(D) CERTIFICATE</u>

The undersigned counsel certifies that this document has been prepared with

Times New Roman 14-point font in accordance with Local Rule 5.1(C).

Dated: October 30, 2024

/s/ Christopher A. Wiech
Christopher A. Wiech
Georgia Bar No. 757333

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on this day, I served a copy of the foregoing on counsel through the Court's CM/ECF system, which will automatically provide a copy to all counsel of record.

Dated: October 30, 2024

*/s/ Christopher A. Wiech*
Christopher A. Wiech
Georgia Bar No. 757333
